UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA

v.                                              Case No. 2:19-CR-114 JD

SERGIO GAMEZ

**OPINION AND ORDER**

On September 19, 2019, a grand jury indicted Sergio Gamez on one count of being a felon in possession of a firearm. (DE 1.) Gamez later pleaded guilty to this sole count. (DE 63.) Sentencing was initially set for April 27, 2022. (DE 62.) However, this sentencing was continued to provide the Court sufficient time to address Gamez's objections to the Presentence Investigation Report ("PSR"). (DE 73.) Following the continuance, Gamez filed a motion to file a supplemental submission. (DE 74.) The Government then filed a response to this supplemental submission. (DE 76.)

The Court now addresses Gamez's objections to the PSR, as well as his supplemental submission.

A.    Discussion

Gamez raises three objections to the PSR. First, he objects to the PSR listing his date of detention as December 1, 2020, arguing that he has been detained pursuant to federal warrant since October 23, 2019. (DE 68 at 1.) Second, Gamez objects to being classified as an armed career criminal, arguing that the PSR incorrectly classifies his prior conviction for "aiding, inducing, or causing another to commit the crime of arson" as a violent felony. (*Id.* at 5.) Third, Gamez objects to the inclusion of paragraphs 5–9 and 17, arguing that these paragraphs are false and unsupported. (*Id.* at 2–5.) The Court will consider each objection in turn.

*(1) Objection to Face Sheet (Date of Detention)*

Gamez first objects to the date of detention on his face sheet, which is listed as December 1, 2020, in the PSR (DE 67 at 1.). However, the date of Gamez's detention will not affect his sentencing, so a ruling on this objection is unnecessary. Fed. R. Crim. P. 32(i)(3) ("[The Court] must – for any disputed portion of the presentence report . . . rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing[.]").

Under 18 U.S.C. § 3585(b), "a defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences" as a "result of the offenses for which the sentence was imposed" or as "a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed . . . that has not been credited against another sentence." However, it is "the Bureau of Prisons, not the sentencing court, that determines sentence credit under 18 U.S.C. § 3585(b)." *Lundy v. United States*, No. 1:04-CR-84, 2017 WL 2060654, at *3 (N.D. Ind. May 15, 2017) (quoting *Miles v. United States*, 2016 WL 6648186, at *2 (S.D. Ind. Nov. 10, 2016)). A district court is not authorized to compute the credit at sentencing. *United States v. Wilson*, 503 U.S. 329, 335 (1992) ("[T]he district court cannot determine the amount of the credit at sentencing."). Rather, the authority to give credit to a defendant under 18 U.S.C. § 3585(b) "rests exclusively with the BOP." *United States v. Ross*, 219 F.3d 592, 594 (7th Cir. 2000). A prisoner who is "dissatisfied with the BOP's determination may, after exhausting [his] administrative remedies, seek judicial review under 28 U.S.C. § 2241." *Lundy*, No. 1:04-CR-84, 2017 WL 2060654, at *3  (quoting *Miles*, 2016 WL 6648186, at *2).

The date of Gamez's detention is not material to the Court's sentencing decision and the responsibility to compute his credit rests exclusively with the BOP . *See United States v. Tindall*, 455 F.3d 885, 888 (8th Cir. 2006) ("[T]he district court's determination of the date [of detention] was irrelevant to any material issue resolved at sentencing."). Therefore, ruling on this objection is unnecessary.

### *(2) Objection to Paragraphs 22, 69, and 70[1]*

Gamez next objects the PSR classifying defendant as an armed career criminal. (DE 68 at 5.) Gamez argues that his prior conviction for "aiding, inducing or causing another to commit the crime of arson" is not a qualifying violent felony conviction under the Armed Career Criminal Act ("ACCA"). (*Id.*) The ACCA imposes a mandatory minimum term of imprisonment of fifteen years "[i]n the case of a person who violates section 922(g) . . . and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The term "'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that [either] has an element the use, attempted use or threatened use of physical force against the person of another; or is burglary, arson, or extortion, [or] involves use of explosives . . . ." 18 U.S.C. § 924(e)(2). The Sentencing Guidelines provides that an armed career criminal's offense level is, at a minimum, 33. U.S.S.G. § 4B1.4.[2]

---

[1] On August 27, 2021, Probation filed its Final PSR. (DE 39.) Gamez then filed objections to certain paragraphs in the PSR. (DE 40.) Following the withdrawal by Gamez from his prior plea agreement, Probation filed a Revised Final PSR. (DE 67.) While much of the substance of this Revised Final PSR stayed the same, the numbering of its paragraphs is slightly different. On March 30, 2022, Gamez again filed objections to the revised Final PSR. While Gamez's objections remain the same in substance, they failed to account for the changed paragraph numbering in the Revised Final PSR. The paragraphs cited above comport to the substance of Gamez's objections and reflect the change in numbering in the Revised Final PSR.

[2] The Court notes that this offense level is prior to any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

3

Gamez first argues that his conviction for aiding, inducing, or causing another to commit the crime of arson does not qualify under ACCA because the state conviction is invalid. Gamez asserts that the conviction "lacked a factual basis and was premised on a false representation that the 'jail fire' he was alleged to [have] aided had caused a 'pecuniary loss of at least $5,000 and/or under circumstances that endanger human life." (DE 68 at 5.) However, "a defendant has no . . . right . . . to collaterally attack prior convictions" that are used to determine federal sentencing enhancements under ACCA, aside from convictions obtained in violation of the right to counsel. *Custis v. United States*, 511 U.S. 485, 487 (1994). Gamez was convicted for aiding arson under Indiana Code § 35-43-1-1(a) and does not argue that his conviction was obtained in violation of the right to counsel. Therefore, he may not now contest that conviction.

Next, Gamez argues that the relevant statute of conviction is actually Indiana Code § 35-41-2-4, which is entitled "[a]iding, inducing, or causing an offense." However, this section "does not set forth a separate crime, but merely provides a separate basis of liability for the crime that is charged." *Cowan v. State*, 783 N.E.2d 1270, 1276 (Ind. Ct. App. 2003). The Supreme Court of Indiana has explained that "there is no separate crime of being an accessory to a crime or aiding and abetting the perpetrator of a crime; rather, a defendant may be convicted as a *principal* upon evidence that he aided or abetted in the perpetration of the charged crime" *Sanquenetti v. State*, 727 N.E.2d 437, 441 (Ind. 2000) (emphasis added). Therefore, while Gamez may have been charged and convicted utilizing the theory of accomplice liability set forth in Indiana Code § 35-41-2-4, the relevant statute of conviction is Indiana's arson statute under Indiana Code § 35-43-1-1.

In a related argument made in Gamez's supplemental submission, he argues that a conviction for aiding and abetting under Indiana Code § 35-41-2-4 cannot be used as a predicate

offense under ACCA, since it is broader than federal law. (DE 74-1 at 1–7.) This argument misses the mark, since, as explained above, Gamez was not convicted under the aiding and abetting statute. The statute relevant for purposes of ACCA is the substantive offense of conviction, not the statute laying out the underlying theory leading to the conviction. For example, in *United States v. Groce*, the Seventh Circuit held that a defendant convicted of being a "party to a crime" of burglary, which was analogous to aiding and abetting, could serve as a predicate under ACCA since "both federal law and . . . Wisconsin state law punish an aider and abettor as a principal" and the defendant's burglary conviction was a violent felony. 999 F.2d 1189 (7th Cir. 1993). Numerous other circuits have reached the same conclusion. *See United States v. Gammell*, 932 F.3d 1175, 1179 (8th Cir. 2019) ("[F]or the purposes of applying the ACCA, it matters not whether [the defendant] was convicted as a principal or aider or abettor; it matters only whether the substantive offense qualifies as a violent felony."); *United States v. Buie*, 960 F.3d 767, 772 (6th Cir. 2020) (rejecting an argument that aiding and abetting an offense was not a predicate due to a "bedrock principle of criminal law" that "one who causes another to commit an unlawful act is as guilty of the substantive offense as the one who actually commits the act"); *Young v. United States*, 22 F.4th 1115, 1122 (9th Cir. 2022) ("[T]o the extent [defendants] have been found guilty of armed bank robbery under an aiding-and-abetting theory, they are treated as if they committed the offense as principals.").

As discussed above, Indiana law also treats an aider and abettor as a principal. Therefore, courts in this district have previously rejected arguments asking the Court to apply the categorical approach to Indiana's aiding and abetting statute as if it were a separate crime. *See also United States v. Mokol*, No. 2:08-CR-97-JVB-APR, 2019 WL 3531265, at *3 (N.D. Ind. Aug. 2, 2019) (rejecting defendant's argument that his conviction for aiding and abetting robbery

5

could not be predicate offense because "Indiana decided to punish the accomplice as if he were the actual perpetrator [and so the] Court must respect that decision and thus cannot distinguish between the two."). Since Gamez was convicted under the arson statute, that is the relevant offense for ACCA purposes. *See Pereida v. Wilkinson*, 141 S. Ct. 754, 762 (2021) (emphasis added) (explaining that under the categorical approach "the court asks only whether an individual's *crime of conviction* necessarily . . . triggers a particular consequence under federal law").

Gamez next argues that his conviction under Indiana's arson statute does not match the definition of a violent felony under the ACCA. The term "'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that [either] has an element the use, attempted use or threatened use of physical force against the person of another; or is burglary, arson, or extortion, [or] involves use of explosives . . . ." 18 U.S.C. § 924(e)(2). In order to determine whether a conviction is a violent felony, the Court employs the categorical approach. Under the categorical approach, the Court considers whether the elements of the offense match the definition of a violent felony without looking to the specific underlying facts of the conviction. *See Taylor v. United States*, 495 U.S. 575, 600–02 (1990). The first step in this analysis is to "determine whether the statute in question is 'indivisible,' meaning it contains a single set of elements, or 'divisible,' meaning it contains multiple alternative elements." *United States v. Vesey*, 966 F.3d 694, 697 (7th Cir. 2020). "If a statute is indivisible," the Court "then lines up that crime's elements alongside those of the generic offense and see[ ] if they match." *Id.*

As it relates to Gamez's crime of aiding and abetting arson, his statute of conviction was for Class B felony arson under Indiana Code § 35-43-1-1, which, at the time of his conviction, read as follows:

> (a) A person who, by means of fire, explosive, or destructive device, knowingly or intentionally damages:
> (1) a dwelling of another person without the other person's consent;
> (2) property of any person under circumstances that endanger human life;
> (3) property of another person without the other person's consent if the pecuniary loss is at least five thousand dollars ($5,000); or
> (4) a structure used for religious worship without the consent of the owner of the structure;
> commits arson, a Class B felony . . . .

I.C. § 35-43-1-1 (2011). The Seventh Circuit has defined generic arson as "causing a fire or explosion with the purpose of destroying a building . . . or damaging *any property*." *Brown v. Caraway*, 719 F.3d 583, 590 (7th Cir. 2013) (emphasis added). The italicized portion of the generic definition makes any analysis of subparagraphs (1)–(4) unnecessary since the type of property damaged is irrelevant to whether the conviction falls within the generic offense. Therefore, the Court focuses its analysis on the mens rea. "'With the purpose of' [in the generic definition] requires willfulness or maliciousness." *Id.* Maliciously in this context means "deliberately (or in willful disregard of known or suspected consequences) using fire to do a harmful act." *United States v. Misleveck*, 735 F.3d 983, 987 (7th Cir. 2013). If "knowingly" and "intentionally" in the Indiana arson statute are no broader than "maliciously" by the generic definition, then the Indiana statute at issue comports with the generic arson definition. In Indiana, a person "engages in conduct 'intentionally' if, when he engages in conduct, it is his conscious object to do so" and a person "engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2; *see, e.g., Ware v. State*, 441 N.E.2d 20, 23 (Ind. Ct. App. 1982) (emphasis added) (in order to "*knowingly* .

. . place a dependent in a situation that may endanger his life or health . . . the accused must have been subjectively aware of a high probability that he placed the dependent in a dangerous situation."). Here, "knowingly" damaging property using fire under the Indiana arson statute is no broader than "maliciously" damaging property as defined. Generic arson ("in willful disregard of . . . *suspected consequences*" using fire to do a harmful act to any property) is less culpable than being "aware of a high probability that he is" damaging property. *Misleveck*, 735 F.3d at 987 (finding that Wisconsin's law comported with the generic definition of arson where it defined knowingly as "practically certain to cause the result" since "practical certainty is a higher standard of proof than suspicion"). Accordingly, the Court finds that the Indiana statute of conviction meets the generic definition of arson.

In Gamez's objection, he asserts that the Seventh Circuit case *Brown v. Caraway* is analogous. 718 F.3d 583, 590 (7th Cir. 2013). Gamez's reliance on *Brown* is misplaced. The statute the Seventh Circuit considered in *Brown* was a Delaware statute which punished those who "*recklessly* damage[] a building" and the Court determined that it did not comport with the generic definition of arson. *Id.* (emphasis added). However, this case is inapposite because, in Delaware, recklessness is something akin to gross negligence. *Misleveck*, 735 F.3d 983, 988 (explaining that the Delaware statute considered in *Brown* "required proof merely of gross negligence [and] would not be punishing only generic arson"). The Indiana statute defining knowingly requires that the defendant know of a "high probability that he is" damaging property which, as explained above, is encompassed by the generic definition of arson.

Lastly, Gamez appears to argue that the enumerated clause no longer applies. He asserts that the Supreme Court, in *Borden  v. United States*, held that all violent felonies require a showing of "[u]se, attempted use, or threatened use of physical force against the person of

8

another." 141 S. Ct. 1817, 1822 (2021). This is wrong. *Borden* was specifically considering whether a state offense of reckless aggravated assault was a violent felony under ACCA's *element clau*se, and was not considering arson or the enumerated clause, like our case is. Even though the defense wants *Borden'*s holding to require the threat of physical force in order for a statute to qualify as a "violent felony," that is not what the Supreme Court held in *Borden* and would be against the clear language of the ACCA. The enumerated clause still applies. And, under the enumerated clause, arson is a violent felony. *Misleveck*, 735 F.3d 983, 986 (7th Cir. 2013) (holding that a conviction under Wisconsin's arson statute was as an ACCA predicate because arson was an enumerated violent felony and the statute comported with the definition of generic arson); *see Buie*, 960 F.3d 767, 772 (6th Cir. 2020) (holding that "knowledge" was a sufficient mens rea to comport with generic arson and that the defendant's conviction for arson was a predicate felony under ACCA's enumerated clause).

      The Court finds that Gamez's prior conviction for aiding and abetting arson comports with the generic arson definition. Accordingly, the Court finds that his prior conviction may serve as an ACCA predicate. Since Gamez did not object to the PSR classifying two other convictions as ACCA predicates, this means that Gamez has three predicate offenses. Therefore, Gamez is an armed career criminal with an offense level of 33. He also faces a mandatory minimum term of imprisonment of 15 years pursuant to 18 U.S.C. § 924(e). The Court notes that because Gamez's offense level is 33 pursuant to his classification as an armed career criminal, the objections related to the enhancement under U.S.S.G. § 2K2.1(b)(6)(B) are moot. However,

to aid the Court in its 3553(a) discussion, the Court will consider the objections to the PSR regarding the offense conduct underlying that enhancement.[3]

### (3) Objection to Paragraphs 5–9 and 17

Gamez next objects to the inclusion of paragraphs 5 through 9 and paragraph 17 of the PSR. Paragraphs 5 through 9 of the PSR describe the events leading up to his arrest on August 7, 2019. (DE 69 at 2.) The Court believes it is helpful to briefly summarize these paragraphs.

According to an interview law enforcement had with Ms. Donna Conners, she, Mr. Gamez, and Mr. Emilio Figueroa were driving together in a vehicle. While on route to a liquor store, Gamez asked Conners to drive him to Walmart to purchase bullets. At some point while driving, Gamez noticed a "black male walking down the street with his hat turned to the side," asked that the car be pulled over, and stated that he was going to "[a]ir him out." When the car was pulled over, "Gamez pointed a firearm out the window at the black male." (DE 67 ¶ 7.) In an interview with Figueroa, he also recounted that Gamez repeatedly asked to go to Walmart to get bullets and that he pulled a rifle and pointed it at a black male with a hat turned to the side. (*Id.* ¶ 6.)

After the incident where Gamez pointed his gun out of the car, they drove to a gas station. (*Id.* ¶ 4.) According to an interview law enforcement had with Tanya Weaver, the store clerk at the gas station, she saw Conners enter with two men. Conners seemed "to be very

---

[3] Gamez also argues that ACCA requires a jury determination whether Gamez's crimes were committed on separate occasions. (DE 74.) However, Gamez admits that this argument is foreclosed by *United States v. Elliott*, 703 F.3d 378 (7th Cir. 2012) (holding that a district court judge may determine whether offenses are committed on separate occasions). The Court is bound by circuit precedent and therefore Gamez's argument must be rejected. Additionally, the Court notes that Probation provided the Court with the records for Gamez's predicate offenses. The Court has reviewed these records, and notes that, given the date of offense information in those records, as well the respective dates of arrest and sentencing, that Gamez's convictions did occur on separate occasions.

nervous and panicked." Conners eventually told Weaver that "she needed a safe place," that "she had been forced to give a ride to the male subjects," and "that she was in fear and needed directions to the nearest police station." (*Id.* ¶ 5.) The police then received a call from this gas station indicating that a woman had been kidnapped. (*Id.* ¶ 3.)

According to the interview with Conners, Gamez then told Conners that he would "[a]ir [her] out," and then said "[t]his bitch called the police. I'm going to smoke her ass." (*Id.* ¶ 9.) The police eventually approached the vehicle, where they found Gamez in possession of a Winchester rifle. (*Id.* ¶ 10.)

In Gamez's objection, he denies threatening to kill anyone or pointing a rifle at a black male wearing a hat turned to the side. (DE 68 at 3.) He also denies saying that he was going to "[a]ir him out" and that he never talked about killing people, shooting the police, or "air[ing] [Conners] out." (*Id.*)

The Court believes that the PSR properly includes paragraphs 5 through 9, as there is sufficient indicia of reliability. "[A] defendant has a due process right to be sentenced on the basis of accurate information." *United States v. Rollins*, 544 F.3d 820, 838 (7th Cir. 2008). "Evidentiary standards are relaxed at sentencing [and] a sentencing court may consider information that has 'sufficient indicia of reliability to support its probable accuracy." *United States v. Abdulahi,* 523 F.3d 757, 761 (7th Cir.2008) (quoting U.S.S.G. § 6A1.3(a)). Here, both Conners and Figueroa provided very similar accounts of the evening to law enforcement. Both stated that Gamez asked multiple times to go to Walmart to get bullets, and both stated that while driving Gamez pulled out a gun and pointed it at a black male with a hat turned to the side. Given these largely parallel accounts to law enforcement, the Court does not believe that these paragraphs lack sufficient indicia of reliability. *United States v. Taylor*, 72 F.3d 533, 543 (7th

Cir. 1995) (finding that PSR bore "sufficient indicia of reliability" where "individuals who provided this information gave largely consistent and mutually-corroborating accounts").

The Court also finds that the PSR correctly includes a four-point sentence enhancement under U.S.S.G. § 2K2.1(b)(6)(B). That section provides for a four-level increase if the defendant: "used or possessed any firearm or ammunition in connection with another felony offense . . ." U.S.S.G. § 2K2.1(b)(6)(B). In order to apply the enhancement, "the government bears the burden of proving by a preponderance of the evidence that the felonious conduct occurred." *United States v. Sandidge*, 784 F.3d 1055, 1062 (7th Cir. 2015). Gamez asserts that the "record evidence . . . does not support a finding that a kidnapping occurred." (DE 68.) The Court disagrees.

In Indiana, "[a] person who knowingly or intentionally confines another person without the other person's consent commits criminal confinement." Ind. Code § 35-42-3-3. The Indiana Supreme Court has held that evidence supported a criminal confinement conviction where the defendant drove around with the victim without her consent. *See Daniels v. State*, 274 Ind. 29, 35–36 (Ind. 1980). Here, the Court finds, by a preponderance of evidence, that Conners was confined without her consent by Gamez. First, Conners reported in her interview that, while in the car with Gamez, "she was scared of [him] because he kept talking about killing people." (DE 67 ¶ 9.)  She also reported that she began arguing with Figueroa "because she wanted to go home" and that Gamez then told her that he would "[a]ir [her out]," referring to shooting her. (*Id.*) Weaver also stated, when interviewed by law enforcement, that Conners had told her she was "in fear" and that she "had been forced to give a ride to the male subjects." (*Id.* ¶ 5.)  The Court believes that the statements made during both these interviews corroborate one another and demonstrate, by a preponderance of the evidence, that Gamez committed the felony of criminal confinement.

Additionally, under Indiana Law, it is also a felony for an individual to "recklessly, knowingly, or intentionally perform[] an act that creates a substantial risk of bodily injury to another person . . . ." Ind. Code. § 35-42-2-2. Indiana Courts have held that pointing a gun at other people, even when unloaded, may create a substantial risk of bodily injury under Indiana's criminal recklessness statute. *See  D.B. v. State*, 658 N.E.2d 595, 595–596 (Ind. 1995); *J.B. v. State*, 923 N.E.2d 28 (Ind. Ct. App. 2010). Both Conners and Figueroa provided statements indicating that Gamez pointed a rifle at a "black male" and said that he would "air him out." Therefore, the Court also finds, by a preponderance of evidence, that Gamez committed the felony of criminal recklessness, which supports the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B).

Accordingly, the Court overrules the objection as it relates to the inclusion of paragraphs 5–9 and 17.

**B.    Conclusion**

For the reasons discussed above, the Court GRANTS Gamez's motion to file supplemental submission. (DE 74.) However, the Court overrules each of Gamez's objections to the PSR. Gamez's offense level is 33 and his mandatory minimum term of imprisonment is 15 years pursuant to his classification as an armed career criminal.[4]

SO ORDERED.

ENTERED: June 6, 2022

/s/ JON E. DEGUILIO
Chief Judge
United States District Court

---

[4] Again, the Court notes that this offense level is the offense level prior to any reduction for acceptance of responsibility.