UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA

v.  Case No. 2:19-CR-114 JD

SERGIO GAMEZ

## OPINION AND ORDER

On September 19, 2019, a grand jury indicted Defendant Sergio Gamez on one count of being a felon in possession of a firearm. (DE 1.) Mr. Gamez later pleaded guilty to this charge. (DE 63.) On July 12, 2022, he was sentenced to 180 months of imprisonment, but the Court of Appeals for the Seventh Circuit vacated that sentence after finding that Mr. Gamez's prior Indiana state-court conviction for arson was not a crime of violence and thus did not qualify as a predicate offense for purposes of the Armed Career Criminal Act. *See United States v. Gamez*, 89 F.4th 608, 610 (7th Cir. 2024).

Prior to being resentenced, Mr. Gamez filed two objections to the Presentence Report ("PSR"). Only the first objection is the subject of this order, and the Court will address the other objection separately. Mr. Gamez objects to paragraph 18 of the PSR setting his base offense level at 24 under U.S.S.G. § 2K2.1(a)(2) due to his two prior convictions under the Indiana robbery statute.[1] Mr. Gamez argues that neither of these convictions constitute a "crime of violence" as that term is defined in § 4B1.2(a)(1), so § 2K2.1(a)(2) is inapplicable to him.

The resolution of Mr. Gamez's objection hinges on whether a person can commit Indiana robbery by harming or threatening harm to himself as Mr. Gamez claims. If that's possible, then

---

[1] Section 2K2.1(a)(2) provides that the base offense level must be set at 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of . . . a crime of violence . . . ."

the Indiana robbery statute is broader than the elements clause of § 4B1.2, and Mr. Gamez's two convictions couldn't be counted as crimes of violence. The Indiana Supreme Court has not yet addressed this question. This Court believes it a better practice to allow them the opportunity to indicate whether Indiana robbery can be committed by the use or threat of force to commit self-harm. Accordingly, the Court will certify this question to the Indiana Supreme Court as explained in this Order.

### A. Background

Mr. Gamez was charged in a one-count indictment with being a felon in possession of a firearm on August 7, 2019. (Indictment, DE 1.) The charge stemmed from an incident involving a reported kidnapping:

> In August 2019 police responded to a 911 call of a reported kidnapping at a gas station near Hammond, Indiana and discovered Sergio Gamez, the purported kidnapper, in possession of a Winchester rifle. Gamez was on probation at the time for a prior robbery conviction. Indeed, eight days earlier Gamez had removed his GPS-tracking ankle bracelet, prompting a LaPorte County Community Corrections officer to file charges for escape. All of these events led federal prosecutors to get involved and charge Gamez with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). In time Gamez pleaded guilty to this offense.

*United States v. Gamez*, 77 F.4th 594, 597 (7th Cir. 2023).

Mr. Gamez was sentenced on July 12, 2022. (DE 83.) In sentencing him, the Court relied on the 2018 Guidelines Manual.[2] (PSR, DE 67 ¶ 15.) At sentencing, the Court considered whether Mr. Gamez's three prior felony convictions—two for robbery and one for aiding and abetting arson—triggered the sentencing enhancement under § 924(e) of the Armed Career

---

[2] Mr. Gamez was originally scheduled to be sentenced in September 2021, with the 2018 Guidelines then in effect. That hearing was rescheduled after Mr. Gamez's counsel withdrew his representation. (DE 44.) The hearing was further rescheduled after Mr. Gamez filed his objections to the PSR. (DE 73.) Although the 2021 Guidelines were in effect at the time of Mr. Gamez's sentencing, there were no differences between the 2018 and 2021 Guidelines in how they applied to Mr. Gamez's sentencing.

Criminal Act ("ACCA"). Answering in the affirmative, the Court sentenced him to 180 months of imprisonment, the mandatory minimum sentence for defendants convicted of violating § 922(g)(1) after committing three or more violent felonies. On appeal, the Seventh Circuit found that Mr. Gamez's conviction for aiding and abetting arson was not a predicate offense under ACCA and remanded the case for resentencing.[3] (DE 96.)

In advance of the resentencing hearing, the probation office prepared a new PSR. (DE 110.) Paragraph 18 of the PSR states that, under § 2K2.1(a)(2), Mr. Gamez's base offense level is 24 because his two prior Indiana robbery convictions are crimes of violence. The first conviction is from 2009 (robbery, class B felony, Ind. Code 35-42-5-1; LaPorte County Circuit Court Case No. 46D01-0905-FB-075[4]). (*See* Sentencing Order, DE 113 at 9.) In that case, Mr. Gamez was charged with aiding two other men in removing money from J.V.'s possession while armed with a deadly weapon "and by placing [J.V.] in fear by threatening the use of said weapon." (Information, DE 113 at 12.)

The second conviction is from 2016 (robbery, level 3 felony, Ind. Code 35-42-5-1; LaPorte County Superior Court Case No. 46D01-1603-F3-00206). (Order, DE 113 at 14.) In that case, Mr. Gamez was charged with "[t]aking property by force or threatening the use of force while armed." (Abstract Judgment, DE 113 at 16.)

Although the 2009 and 2016 robbery convictions were prosecuted under two versions of the statute, their elements are identical and the differences are only in felony classifications (the

---

[3] On appeal, Mr. Gamez didn't dispute that his two robbery convictions qualified as violent felonies. *See Gamez*, 77 F.4th at 597.

[4] The case number in the PSR has a typographical error, using the letter "C" instead of "D."

later version classifies the felonies using numerals while the earlier version uses letters). Here's the statute in effect in 2016:

> A person who knowingly or intentionally takes property from another person or from the presence of another person:
>
> (1) by using or threatening the use of force on **any person**; or
>
> (2) by putting **any person** in fear;
>
> commits robbery, a Level 5 felony. However, the offense is a Level 3 felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a Level 2 felony if it results in serious bodily injury to any person other than a defendant.

Ind. Code § 35-42-5-1 (2016) (emphasis added).

Mr. Gamez objects to using § 2K2.1(a)(2) to set his base offense level, arguing that Indiana robbery is not a crime of violence because it is broader than the elements clause under § 4B1.2.

### B. Discussion

In his objection, Mr. Gamez acknowledges that the Seventh Circuit has held that Indiana robbery is a crime of violence. He argues, however, that in light of the Seventh Circuit decision in *Portee v. United States*, 941 F.3d 263 (7th Cir. 2019), and the Indiana Court of Appeals decision in *Morales v. State*, 227 N.E.3d 183 (Ind. Ct. App. 2024), transfer denied, 233 N.E.3d 400 (Ind. 2024), Indiana robbery can no longer be considered a crime of violence under § 4B1.2(a) because the elements of the Indiana robbery statute are broader than in § 4B1.2(a). The Government disagrees with this characterization, arguing that *Portee* and *Morales* deal with different offenses (intimidation and rape, respectively) and are not controlling here.

To address this dispute, the Court must employ

   the categorical approach to determine whether an offense is a crime of violence for Guidelines purposes. *See, e.g., United States v. Montez*, 858 F.3d 1085, 1092 (7th Cir. 2017); *see also United States v. Taylor*, 630 F.3d 629, 633 n.2 (7th Cir. 2010) (explaining that courts apply the categorical approach to the Armed Career Criminal Act and the Guidelines in the same manner). That is, we consider whether the elements of the offense match the definition of a crime of violence without looking to the specific underlying facts of the conviction. *See Taylor v. United States*, 495 U.S. 575, 600–02, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990).

*United States v. Vesey*, 966 F.3d 694, 696–97 (7th Cir. 2020).

  Before addressing the parties' arguments, the Court must determine which edition of the Sentencing Guidelines controls. Barring the ex post facto concerns, "[a]s a general rule, the district court must apply the guidelines in effect at the time of sentencing . . . ." *United States v. Fones*, 51 F.3d 663, 669 (7th Cir. 1995); *see also* U.S.S.G. § 1B1.11(a) & (b)(1). However, when, as here, the case is remanded by the court of appeals for resentencing, the statute prescribes that "'the court shall apply the guidelines issued by the Sentencing Commission . . . that were in effect on the date of the previous sentencing.'" *United States v. Tyler*, 2023 WL 8707124, *5 (7th Cir. 2023) (quoting 18 U.S.C. § 3742(g)(1)). Therefore, the Court will use the 2018 Manual,[5] which was in effect at the time of Mr. Gamez's original sentencing.[6]

  The Sentencing Guideline applicable to the unlawful possession of a firearm specifies a base offense level of 24, "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of . . . a crime of violence . . . ." § 2K2.1(a)(2). The application notes for § 2K2.1 define "crime of violence" as having "the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." § 2K2.1 App. Note 1. In turn, and as relevant here, § 4B1.2(a)(1) states that a prior offense is a "crime of violence" if it

---

[5] Unless otherwise indicated, all Guidelines citations are to the 2018 edition of the Manual.

[6] The current PSR states that it's based on the 2023 Guidelines Manual (DE 110 ¶ 17), so it will need to be revised in accordance with § 3742(g)(1).

5

"has as an element the use, attempted use, or threatened use of physical force against the **person of another**." *Id.* (emphasis added).

"The statute defines robbery as 'knowingly or intentionally tak[ing] property from another person or from the presence of another person' either 'by using or threatening the use of force on any person' or 'by putting any person in fear.'" *United States v. Duncan*, 833 F.3d 751, 753 (7th Cir. 2016) (quoting Ind. Code § 35–42–5–1). In *United States v. Armour*, 840 F.3d 904, 906–07 (7th Cir. 2016), the Seventh Circuit considered the defendant's argument "that Indiana robbery does not qualify as a crime of violence under the elements clause of § 4B1.2 because it may be committed not only by using or threatening the use of force but also by "putting any person in fear." *United States v. Armour*, 840 F.3d 904, 907 (7th Cir. 2016), as amended (June 26, 2017). That is, according to the defendant "'putting any person in fear' does not necessarily involve 'the use, attempted use, or threatened use of physical force against the person of another.'" *Id*. The court noted that the same argument had already been rejected in *United States v. Duncan*, 833 F.3d 751 (7th Cir. 2016), "as applied to the elements clause of the definition of a 'violent felony' under the Armed Career Criminal Act." *Id*. Namely, "the 'fear' in the Indiana robbery statute is fear of bodily injury, and Indiana courts have interpreted the statute so that 'robbery by placing a person in fear of bodily injury under Indiana law involves an explicit or implicit threat of physical force and therefore qualifies as a violent felony' under the statute." *Id.* (quoting *United States v. Lewis*, 405 F.3d 511, 514 (7th Cir. 2005)). The court thus extended *Duncan*'s holding—that a conviction under Indiana Code § 35-42-5-1 qualifies as a "violent felony"—to the definition of "crime of violence" under § 4B1.2.

That said, in these cases and those similar to them, *see, e.g.*, *United States v. Dixon*, 27 F.4th 568, 572 (7th Cir. 2022) ("[R]obbery under Indiana Code § 35-42-5-1 is a crime of

6

violence."), the Seventh Circuit was not faced with the question whether Indiana robbery is broader than § 4B1.2(a)(1) because it proscribes the use or threat of force against *any person*, not just the person of *another*. The Government's explanation for the absence of this dilemma is that Indiana robbery can be committed only by force or threat of force against the person of another, regardless of the wording of the statute, and any contrary suggestion is "legal imagination" lacking a realistic probability that the state would apply this statute in any different manner. (Gov.'t Resp. Br., DE 119 at 5.) Against Mr. Gamez's suggestion that Indiana robbery can be committed by threat of self-harm - without providing a single example - the Government urges the Court to look at how Indiana courts have interpreted and applied the robbery statute.

The Court is unaware of any Indiana case (nor any case in the Seventh Circuit) dealing with the question of who can be the subject of the use or threatened use of force under the Indiana robbery statute. However, in interpreting similarly worded language in the Indiana felony Intimidation statute, the Seventh Circuit found in *Portee*, 941 F.3d 263, that the crime encompassed "force against or danger to . . . any human being," *id.* at 271, including the perpetrator; making the statute broader than the elements clause which involves "the use, attempted use, or threatened use of physical force against the person of *another*[7]." § 4B1.2(a).

In *Portee*, the defendant pleaded guilty to possession of a firearm by a felon and received a fifteen-year mandatory minimum sentence under the ACCA. 941 F.3d at 265. Before the Seventh Circuit, the parties disagreed, among other things, whether the defendant's prior Indiana state conviction of felony intimidation, Indiana Code § 35-45-2-1, was a predicate offense under the ACCA. The Court of Appeals sided with the defendant and remanded for resentencing.

---

[7] "Person of another" refers to someone other than the perpetrator. *See* Merriam-Webster Unabridged Dictionary, https://unabridged.merriam-webster.com/unabridged/another ("another: different or distinct from the one first named or considered") (last visited January 6, 2025).

7

At the time of the defendant's offense, intimidation was a Class A misdemeanor in Indiana, § 35-42-2-1(a), but it was "a Class D felony if . . . the threat is to commit a forcible felony," § 35-42-2-1(b)(1)(A). In turn, "forcible felony" was defined as "a felony that involves the use or threat of force against a human being, or in which there is imminent danger of bodily injury to a human being." *Portee*, 941 F.3d at 270. In comparing this definition to the ACCA's elements clause, the Seventh Circuit noted that provision

> requires physical force against the person of *another*, but an Indiana forcible felony could involve force against or danger to *a human being*, any human being. So Portee's conviction of Indiana felony intimidation, involving a threat to commit a forcible felony, did not require as an element the use, attempted use, or threatened use of physical force against the person of another because the human being facing force or danger could be the defendant himself, so far as Indiana's elements are concerned.

*Id*. at 271. The court then proffered several situations which could meet all the elements of Indiana felony intimidation by threat to commit forcible felony but did not involve use, attempted use, or threatened use of physical force of another:

> For example, police surround an armed suspect. He threatens them: "Back off or I'll shoot myself!" All elements of Indiana felony intimidation are met because resisting arrest is (or can be) a felony even though suicide (in Indiana) is not. Or police approach an unarmed suspect on a bridge and he threatens them: "Back off or I'll jump!"
>
> As another example, a doctor refuses to prescribe more narcotics to a patient, so he threatens to use illegal drugs.
>
> As another example, a mother tries to take her drug-addicted son to therapy. But he threatens her that if she persists he will buy and use meth. All Indiana felony intimidation elements are met.

*Id*. at 271–72 (citations omitted). The court was quick to note that it was not relying "on 'fanciful hypotheticals not applicable in real world context' for the conclusion that a conviction cannot support application of the ACCA." *Id*. at 272. Rather, "actual cases provide real-life examples of scenarios potentially satisfying the relevant division of Indiana intimidation but not the ACCA's

8

elements clause." *Id*. The court thus found that "[b]y encompassing self-harm, Indiana's intimidation statute is broader than the ACCA's element's clause, which references the 'person of another'"; someone other than the perpetrator. *Id*. at 273.

The language of the Indiana robbery statute in effect at the time of Mr. Gamez's convictions resembles the language of the Indiana forcible felony statute; "any person" may be the same as "a human being.":

| | |
|---|---|
| A person who knowingly or intentionally takes property from another person or from the presence of another person:<br>(1) by using or threatening the use of force on **any person**; or<br>(2) by putting **any person** in fear; commits robbery, a Level 5 felony. . . .<br><br>Ind. Code § 35-42-5-1 (2016). | Forcible felony is "a felony that involves the use or threat of force against **a human being**, or in which there is imminent danger of bodily injury to **a human being**."<br><br>*Portee*, 941 F.3d at 270 (quoting Ind. Code 35-41-1-11 (2006)). |

Therefore, consistent with *Portee*, it's conceivable that the phrase in the Indiana robbery statute, "by using or threatening the use of force on any person," allows for the commission of the offense not only through force or threats of force directed to another, but also to oneself. The Government's only objection to this interpretation is that felony intimidation is prohibited by a different statute than robbery, but it does not explain why similar phrases should bear different meanings. The Government also seeks to undermine *Portee*'s holding by noting that its separate holding—finding that Indiana pointing-a-firearm statute does not qualify under the ACCA— presents unresolved questions. (Gov't Resp. Br., DE 119 at 6 n.1 (citing *United States v. Smith*, 981 F.3d 606, 611 (7th Cir. 2020) ("[R]esolving the apparent tension between *Portee* and [*Stokeling v. United States*, 139 S. Ct. 544, 554 (2019)] is a question for another day.")). That's

9

not helpful and distracting from the real issue at hand, which the Government has failed to address sufficiently.

The plain language of the Indiana robbery statute appears to encompass commission of the crime by threat of self-harm. There's an absence of opinions from the Indiana courts that define the limits of robbery, so this Court cannot conclusively state whether the elements of Indiana robbery match or are narrower than the elements clause of § 4B1.2.

Though indirectly, the scope of Indiana robbery is further obscured in light of the Indiana Court of Appeals finding in *Morales* that evidence was sufficient to support a rape conviction where the victim perceived self-harm by the perpetrator as both imminent and compelling her compliance. In that case, the defendant (Morales) was convicted of two counts of level 1 felony rape. The evidence showed the following:

> Morales followed K.M.[8] into the bedroom and threatened to take custody of J.M. He then sat on the end of the bed and stated that his life was over and that he was losing his family, and he again stated that he did not want to live anymore. As Morales still held the rifle in his hand, he said, "[M]aybe I'd want to live longer if you give me oral." K.M. believed that Morales was serious about his suicide threat because he had never threatened suicide while holding a gun in his hand. K.M. did not want to perform oral sex but complied because she was afraid of what Morales might do. K.M. placed Morales's penis in her mouth, but after a few minutes, when his penis did not become erect, he indicated that he wanted her to stop.
>
> Morales continued to hold the rifle and ordered K.M. to call [the coworker], who was still driving home to South Bend. Morales told Kenton that he would need to take care of K.M. because he planned to take "everything" from her. After the call ended, Morales paced around the apartment stating that he did not want to live

---

[8] The victim, K.M., was the defendant's wife.

> anymore. K.M. watched as Morales appeared to be loading or unloading the rifle. Morales ordered her to get undressed. K.M. did not want to get undressed, but she was "scared" about what Morales was going to do with the rifle. K.M. got undressed and lay on the bed. Morales climbed on top of her, still holding the gun with the barrel near her head, and told her to put his penis in her vagina. K.M. did as she was instructed. She did not want to have sexual intercourse with Morales but complied because she thought he would hurt himself if she refused. Morales told her that it would be her fault if he killed himself and that she would have to explain it to her son. After a few minutes, Morales ejaculated, and the intercourse ceased.

*Morales*, 227 N.E.3d 183, 187 (citations to record omitted).

When police were called, they questioned the wife who "told them that Morales had threatened to kill himself if she did not perform oral sex and engage in sexual intercourse with him. She further reported that she did both as Morales was holding a rifle." *Id.* at 188.

The State of Indiana charged the defendant with two counts of level 1 felony Rape. "To prove the two allegations of rape in accordance with Indiana Code Section 35-42-4-1(a)(1), the State was required to prove that Morales knowingly or intentionally had sexual intercourse with K.M. and caused her to perform or submit to other sexual conduct when K.M. was 'compelled by force or imminent threat of force.'" *Id.* at 188–89.

> The States theory at trial was that Morales, while armed with a rifle, compelled K.M. to engage in both intercourse and oral sex by threatening to kill himself. Indeed, K.M.'s testimony made clear that she felt compelled to perform these nonconsensual acts because she was afraid that Morales would hurt himself if she refused.

*Id*. at 189.

On appeal, the defendant argued that "this evidence was insufficient because the phrase 'force or imminent threat of force' as used in the rape statute 'contemplates a statement of intent to harm the victim or another person, not a statement of intent to commit self-harm.'" *Id*. The Indiana Court of Appeals disagreed finding no such limitation in the statute:

> When assessing the sufficiency of the evidence of rape, we look to the victim's perception of the circumstances to determine the presence or absence of "forceful

> compulsion." *Newbill v. State*, 884 N.E.2d 383, 392 (Ind. Ct. App. 2008). Indeed, the issue is simply "whether the victim perceived the aggressor's force or imminent threat of force as compelling her compliance." *Id*. As such, it is the coerced or compelled acquiescence to sexual intercourse or other sexual conduct that results from a threat that defines a rape. Morales's assertion that a defendant's threat of self-harm cannot, as a matter of law, constitute "force or imminent threat of force" misses the mark and attempts to create an exception in the rape statute that simply does not exist.

*Morales*, 227 N.E.3d at 189.

Likewise, the court found that evidence was sufficient to convict:

> While holding a rifle in his hand, Morales repeatedly stated that he did not want to live anymore and that his life was over. He then twice stated to K.M., "[M]aybe I'd want to live longer if you give me oral." K.M. testified that she perceived this statement as a suicide threat and to mean that Morales would hurt himself if she did not comply. After the oral sex occurred, Morales paced around the apartment still repeating that he did not want to live anymore. As Morales held the gun in his hand, he ordered K.M. to get undressed, lay on top of her, and had sexual intercourse with her. K.M. stated that she complied because she was "scared" since Morales "had a gun in his hand" and she "didn't know what was going to happen." This evidence is more than sufficient to support the jury's conclusion that K.M. perceived Morales's threat of self-harm as both imminent and compelling her compliance.

*Id*. at 189–90 (citations to the record omitted).

While *Morales* does deal with a different offense, it nevertheless supports Mr. Gamez's argument that force or threat of force, as in robbery, can be accomplished by threat of self-harm. The rape statute employs the phrase "compelled by force or imminent threat of force" which according to the Indiana Court of Appeals can constitute coercion even when directed toward the perpetrator. And if rape can be committed by the defendant threatening to kill himself, it's not inconceivable that using or threatening self-harm during larceny may meet the definition of Indiana robbery. But, again, the issue has not been addressed by the Indiana Supreme Court, and this Court believes it prudent to give them the opportunity to do so.

12

### C. Certification to the Indiana Supreme Court

The district court "may certify a question of Indiana law to the [Indiana] Supreme Court when it appears to the federal court that a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent." Ind. R. App. P. 64(a).[9] The Seventh Circuit has explained that "certification is appropriate when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue." *State Farm Mut. Auto. Ins. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001) (quoting *In re Badger Lines, Inc.*, 140 F.3d 691, 698–99 (7th Cir. 1998)); *see also Rain v. Rolls-Royce Corp.*, 626 F.3d 372, 378 (7th Cir. 2010). Because certification is burdensome to the litigants and the state judiciary, federal courts "approach the decision to certify with circumspection." *Pate*, 275 F.3d at 671. "The decision to grant or deny a motion to certify a question of state law is discretionary with the district court." *Brown v. Argosy Gaming Co., L.P.*, 384 F.3d 413, 417 (7th Cir. 2004) (citing *United Farm Bureau Mut. Ins. v. Metro. Hum. Relations Comm'n*, 24 F.3d 1008, 1015 n.4 (7th Cir. 1994)).

The Court finds this course of action to be most appropriate. The Court is faced with no Indiana precedent to determine whether Indiana robbery can be committed by the threat of self-harm. Moreover, the question to be certified is outcome determinative of the case: under the view that Indiana robbery constitutes a crime of violence, Mr. Gamez is subject to a base offense

---

[9] Incidentally, while this case was pending on appeal from the original sentence, the Seventh Circuit sought certification regarding the scope of the Indiana arson statute. *See Gamez*, 77 F.4th at 602–03.

level of 24, but the starting offense level would be lower if the contrary is true.[10] Furthermore, without clear guidance from the state, the federal courts will be left to decide a question of particular state interest.

The Court therefore respectfully requests that the Indiana Supreme Court exercise its discretion to answer the following certified question:

- Indiana law states that robbery occurs when a person "knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear . . . ." Ind. Code § 35-42-5-1. Under Indiana law, can the state prove that the defendant committed robbery by using or threatening the use of force against himself/herself, if all other necessary elements are met? Or must the force or its threat be directed against another person, that is, a person other than the defendant?

### D. Conclusion

The question is CERTIFIED. All further proceedings in this Court are STAYED while the Indiana Supreme Court considers this matter.

---

[10] In its response brief, the Government argues that, even if the elements of Indiana robbery are broader than the elements clause under § 4B1.2, the statute nevertheless falls within the definition of generic robbery listed in the enumerated clause because it does not limit against whom the force or threat of force must be directed. The Government's argument assumes too much without analysis. The Court is not persuaded that generic robbery encompasses a threat of self-harm and, therefore, continues to maintain that the issue outlined in this order is determinative to Mr. Gamez's case.

SO ORDERED.

ENTERED: January 7, 2025

                                                       /s/ JON E. DEGUILIO
                                        Judge
                                        United States District Court